UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
HELMER BRIGHTLEY,                                           :
                                        Petitioner,         :
                                                            :     11 Civ. 1761 (LGS)
                -against-                                   :
                                                            :     **OPINION AND ORDER**
PHILLIP HEATH,                                              :
                                        Respondent.         :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/15/16____

LORNA G. SCHOFIELD, District Judge:

Petitioner Helmer Brightley brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of one count of second-degree murder, two counts of second-degree assault and one count of second-degree criminal possession of a weapon (the "Petition"). This case was referred to the Honorable Debra Freeman for a report and recommendation (the "Report"). The Report recommends that the writ be denied. Petitioner submitted timely objections to the Report (the "Objections"). For the following reasons, the Report is adopted, and the Petition is denied.

**I.    BACKGROUND**

The facts relevant to the Petition are set out in the Report and summarized here. George Warren, the victim, was involved in the smuggling and sale of marijuana. He owed a man named Nathaniel Coache a debt in connection with those activities. To satisfy the debt, Warren permitted Coache to sell marijuana from the basement of his building for three months. Petitioner helped with the daily operations of Coache's marijuana business from Warren's basement. After three months, Warren reclaimed the basement over Coache's objection. On the evening of July 10, 1988, Petitioner and Coache's son, Mark Brown (known as "Bigga"), went to

Warren's building and argued with Warren about the debt and the use of his building to repay the debt. The argument turned deadly when both Petitioner and Bigga brandished guns and began firing. Warren was shot twice and fatally wounded. Petitioner was apprehended 17 months later.

In May 1991, the trial court held a hearing pursuant to *People v. Sandoval*, 357 N.Y.2d 849, 853 (1974). In New York state court, a *Sandoval* hearing permits a defendant, before deciding whether to testify at trial, to obtain a ruling about whether the prosecution may use prior criminal acts for impeachment. Here, the prosecutor sought to inquire about Petitioner's two prior convictions for marijuana offenses and his August 1985 arrest in Florida for false imprisonment, aggravated battery, and possession of marijuana. According to the prosecutor, the Florida case against Petitioner was dismissed because the victim declined to testify and another eyewitness was unable to testify because he was found dead in the trunk of a car. The trial court ruled that, if Petitioner testified that he was a nonviolent individual, he could be impeached with limited questions about his involvement in the Florida events, but that details about the alleged beating and torture would be excluded. The court also ruled that the prosecution would be allowed to ask one question about Petitioner's marijuana convictions.

The trial court also held a pretrial hearing pursuant to *People v. Ventimiglia*, 52 N.Y.2d 350 (1981), to determine whether evidence of Petitioner's uncharged crimes (the sale of marijuana) would be admissible as direct evidence at trial. The parties agree that, although there is no written record of the *Ventimiglia* ruling, the trial court must have ruled off the record prior to trial that some such evidence would be admissible to prove motive or intent because the trial court's ruling is referenced in the trial transcript.

The trial spanned twelve days and included the testimony of several witnesses, though Petitioner did not testify.  Pertinent to this case, defense counsel sought to impeach one eyewitness to the shooting, Harold Cephas, by questioning him about his cooperation with the prosecution.  Cephas testified that the prosecution did not promise him a particular sentence in exchange for his testimony, but that he thought cooperating would "help" him with an unrelated case.  Cephas also testified that he had been arrested and charged with murder, but he resolved that case by pleading guilty to criminally negligent homicide and criminal possession of a weapon in the third degree, for which he received a prison sentence of two to six years.

The prosecution proceeded on a theory that Petitioner and Bigga acted in concert.  At the charging conference, the trial court -- over defense counsel's objections -- stated that it would give the jury an "acting in concert" instruction.  The jury instructions included an explanation of aiding and abetting and illustrated the crime with hypothetical examples.  As part of the charge, the jury was instructed that "the People must prove to you by proof beyond a reasonable doubt that this defendant act[ed] intentionally, in other words, that he intended to kill [Warren]."

On June 13, 1991, Petitioner was convicted of one count of second-degree murder, two counts of second-degree assault and one count of second-degree criminal possession of a weapon.  On July 11, 1991, Petitioner was sentenced to an aggregate prison term of 29 2/3 years to life.  He filed a notice of appeal with the New York Supreme Court, Appellate Division, First Department, on or about July 21, 1991.  After his conviction, Petitioner's family retained appellate counsel to represent him on direct appeal and in connection with any further post-conviction motions and appeared to have fully paid the retainer by early 1992.  Petitioner, however, received only sporadic communication from his appellate counsel despite Petitioner's prodding.  Petitioner filed two grievances with the Departmental Disciplinary Committee for the

First Department. Appellate counsel did not perfect Petitioner's direct appeal until March 20, 2006, nearly 15 years after his appeal was noticed. The First Department denied the appeal and affirmed the conviction on November 18, 2008. On February 27, 2009, the New York Court of Appeals denied leave to appeal the First Department's decision.

In May 2006, approximately two months after filing a brief on direct appeal, Petitioner filed a motion with the trial court pursuant to New York Criminal Procedure Law Section 440.10 ("CPL 440.10"), seeking to vacate his conviction. In a decision dated May 14, 2007, the trial court denied Petitioner's CPL 440.10 motion. The First Department denied leave to appeal on October 2, 2007.

Petitioner sought a writ of error coram nobis on August 25, 2009, with the First Department, claiming ineffective assistance of appellate counsel and denial of due process arising from appellate counsel's delay. The First Department denied the application on July 6, 2010, and the New York Court of Appeals denied leave to appeal on September 28, 2010.

## II.   LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

The court must undertake a de novo review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge. *See* 28 U.S.C.

4

§ 636(b)(1); *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error.  *Diaz v. City Univ. of N.Y.*, No. 13 Civ. 2038, 2015 WL 5577905, at *7 (S.D.N.Y. Sept. 22, 2015).  "[A] district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).  Even when exercising de novo review, "[t]he district court need not . . . specifically articulate its reasons for rejecting a party's objections . . . ."  *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006).

Under the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), a petitioner who is in custody pursuant to a state court's judgment may seek a federal writ of habeas corpus on the ground that his custody is in violation of federal law, provided he has exhausted all available state court remedies, or is excused from doing so.  *See* 28 U.S.C. § 2254(a)-(b)(1).  To exhaust, a petitioner must "'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Where a state court has reached the merits of a federal claim, a petitioner is not entitled to habeas relief unless he demonstrates that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court."  *Id.* at 132, 134-35 (quoting 28 U.S.C. § 2254(d)(1)-(2)).  State court factual findings "shall be presumed to be correct" and the petitioner

"shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

## III. DISCUSSION

The Petition seeks habeas relief on the grounds that Petitioner was denied: (1) the right to be present at the *Ventimiglia* hearing; (2) due process based on an alleged *Brady* violation; (3) effective assistance of appellate counsel who allegedly had a conflict of interest, and due process because of the delay on appeal; (4) a fair trial because of the state court's reliance on purportedly false information in rendering its *Sandoval* ruling; and (5) effective assistance of trial counsel. The Report recommends that the Petition be dismissed in its entirety. The Objections dispute the Report's recommendations on all five grounds.

### A.   Denial of Right to Be Present at the *Ventimiglia* Hearing Claim

The Petition asserts that Petitioner was denied the opportunity to be present at the *Ventimiglia* hearing held before the trial court. The Report finds that this claim should be dismissed for three reasons: (1) Petitioner did not prove that he exhausted this claim on federal constitutional grounds on direct appeal because, among other things, he cited only New York state cases to support this argument in state court; (2) although Petitioner raised the federal claim in his CPL 440.10 motion, the trial court denied that motion on a state procedural ground, barring federal habeas review; and (3) the claim lacks merit because, if Petitioner was absent from the *Ventimiglia* hearing, his absence did not violate a federal right. The Objections dispute all three grounds for rejecting this claim.

The Objections assert in general and conclusory terms that this claim has been exhausted and is not procedurally barred. Having reviewed the Report and finding no clear error, these objections are overruled.

Even assuming that this claim is exhausted and not procedurally barred and that Petitioner was absent from the *Ventimiglia* hearing, Petitioner has not shown that his absence amounts to a federal violation. Under the U.S. Constitution, "[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Contreras v. Artus*, 778 F.3d 97, 113 (2d Cir. 2015) (quoting *United States v. Gagnon*, 470 U.S. 522, 526 (1985)) (internal quotation marks omitted). This privilege of presence is not guaranteed "'when presence would be useless, or the benefit but a shadow.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106-07 (1934)). Here, the Report correctly finds any error in excluding Petitioner was harmless because the trial court's ruling was largely favorable to Petitioner. In particular, the trial court appears to have ruled that evidence of uncharged crimes relating to the sale of marijuana would be permitted only to prove motive or intent. On this record, Petitioner has not shown that the fairness of the proceeding was thwarted by his purported absence.

Petitioner asserts that *Jones v. Artuz*, 96 F. App'x 742 (2d Cir. 2004), establishes his federal right to attend the *Ventimiglia* hearing. Petitioner is incorrect. In *Artuz*, the Second Circuit concluded that a petitioner's claim that his absence from the *Ventimiglia* hearing violated his constitutional rights was procedurally barred and expressly declined to "address the merits of this constitutional claim." *Id.* at 744. Although a criminal defendant has a well established state law right to be present at a *Ventimiglia* hearing, *see People v. Dokes*, 79 N.Y.2d 656 (1992), that right does not arise under the federal constitution, but rather under New York state law. *See, e.g.*, *Liggins v. Burge*, 689 F. Supp. 2d 640, 650 (S.D.N.Y. 2010) (finding right to be present at *Ventimiglia* hearing was based on state -- not federal -- law); *Ford v. Phillips*, No. 03 Civ. 2077,

7

2007 WL 957536, at *9 (E.D.N.Y. Mar. 29, 2007) (same); *Jones v. Artuz*, No. 97 Civ. 2063, 2002 WL 31006171, at *9 (E.D.N.Y. Aug. 30, 2002) (same). Accordingly, this claim is rejected.

  **B.** ***Brady* Violation Claim**

As his second ground for habeas relief, Petitioner claims that his due process rights were violated because the prosecution failed to disclose a cooperation agreement with Cephas. The Report treats the *Brady* claim as exhausted but finds that it fails on the merits because the document in question was not material, as required for a *Brady* violation. The Objections raise two arguments -- that Judge Freeman improperly failed to hold an evidentiary hearing and requests that one be held and that the prosecution should have provided the document to the defense. Petitioner's arguments fail.

First, an evidentiary hearing would serve no purpose as the facts are not unknown or disputed. The record clearly identifies the document at issue and indicates that the prosecution did not produce the document to the defense for trial. Therefore, Judge Freeman was not required to hold an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (stating that, when deciding whether to grant a federal habeas petitioner's request for an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief").

Second, Petitioner makes only a conclusory objection to the Report's finding that the document was not required to be disclosed. The Objections do not address the materiality issue underlying the Report's conclusion. Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is *material* either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (emphasis

added).  Impeachment evidence that would not likely change the verdict is not material.  *See Giglio v. United States*, 405 U.S. 150, 154 (1972).  Here, the jury was informed that Cephas cooperated with the prosecution, hoping to obtain leniency, and that he pleaded guilty to a reduced charge.  In light of this record, the undisclosed document is unlikely to have changed the verdict.  The Report is not clearly erroneous in finding that the document is not material and therefore not required to be disclosed.  Petitioner's *Brady* claim is rejected.

### C. Claims Related to Appellate Counsel

The Petition asserts that appellate counsel was ineffective because he:  (1) had a conflict of interest; and (2) failed to interview a witness and diligently perfect the appeal.  In his submissions, Petitioner also argues that the appellate delay violated his due process rights.

The Report recommends that these arguments be rejected both for failure to exhaust and on the merits.  The Report finds that Petitioner could not meet his burden of proving that he had exhausted these claims because the court did not have before it a copy of Petitioner's application for leave to appeal the First Department's denial of his application for writ of coram nobis.  In response and with his Objections, Petitioner provided a copy of his notice of appeal.  Since these claims were included in the application for leave to appeal and were denied by that court, Petitioner has exhausted his state court remedies, as required, by presenting his claim to the highest state court.  *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'" (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990))).  Nevertheless, these claims fail on the merits.

9

### 1. Conflict of Interest Claim

Petitioner argues that appellate counsel had an "irreparable" conflict of interest because he delayed almost fifteen years in perfecting the appeal, which led Petitioner to file two formal disciplinary complaints against him. According to Petitioner, this conflict caused appellate counsel to forego oral argument on Petitioner's appeal to avoid being reprimanded by the state court.

The Report recommends that this claim be rejected because Petitioner did not demonstrate that his counsel had an "actual conflict" under Second Circuit case law or that the state court's ruling rejecting his claim of conflicted appellate counsel was "contrary to . . . clearly established Federal law" as the AEDPA requires for habeas relief. *See* 28 U.S.C. § 2254(d). Petitioner objects to the Report's conclusion that no conflict existed and the speculation that appellate counsel may have had legitimate reasons for not seeking oral argument, and argues that there are no legitimate reasons. These objections are overruled as they misperceive the law.

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Cohan*, 798 F.3d 84, 88 (2d Cir. 2015) (quoting *LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005)) (alteration omitted). In order to show ineffective assistance because of counsel's conflict of interest, a petitioner must show "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (quoting *Cuyler v. Sullivan*, 466 U.S. 335, 350 (1980)). "These components are considered in a single, integrated inquiry." *Eisemann v. Herbert*, 401 F.3d 102, 108 (2005). The *Sullivan* standard "is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect." *Id.* (quoting *Mickens v. Taylor*, 535 U.S.

10

162, 172 n.5 (2002)).  "An actual conflict, for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Id.* (internal quotation marks omitted). To prove an actual lapse in representation, "a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Mappiedi*, 62 F.3d 465, 469 (2d Cir. 1995) (quoting *United States v. Levy*, 25 F.3d 146, 157 (2d Cir. 1994) (internal quotation marks omitted).

Applying this standard, Petitioner has not shown an "actual conflict."  In an effort to establish an actual conflict of interest, the Objections assert that appellate counsel failed to appear for oral argument despite assurances to Petitioner that he would do so to clarify portions of the brief.  Assuming arguendo that these allegations are true, they do not prove that the reason appellate counsel avoided oral argument was because of his own self interest to evade being reprimanded.  *See United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000) ("[D]efendant must also show causation—that the alternative defense was 'inherently in conflict with or not undertaken due to the attorney's other loyalties or interests'" (quoting *United States v. Gambino*, 864 F.2d 1064, 1070 (1988))).

Even if Petitioner's counsel had shown an "actual conflict," applying the standard articulated by the Second Circuit, he is not entitled to a writ of habeas corpus given the AEDPA proscription:  "A petition for habeas corpus cannot be granted unless the state court's ruling 'resulted in a decision that was contrary to, or involved an unreasonable interpretation of, clearly established Federal law, *as determined by the Supreme Court of the United States*." *Eisemann*, 401 F.3d at 110 (emphasis added) (quoting 28 U.S.C. § 2254(d)(1)).  The Second Circuit standard articulated above is more lenient to Petitioner than the standard in other Circuits.  *See*

11

*Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001) (defendant must show "that the alternative strategy or tactic was objectively reasonable" and "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict."); *see also Covery v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) (requiring same approach); *Quince v. Crosby*, 360 F.3d 1259, 1264-65 (11th Cir. 2004) (same). The Supreme Court has not resolved the issue. Where, as here, there is an "absence of a definitive ruling by the Supreme Court as to whether ineffective assistance claims based on a conflict of interest are to be assessed under the 'plausible' strategy standard of this Circuit or the 'objectively reasonable' standard of other Circuits, it was not unreasonable for the state court to assess and reject [petitioner's] claim under what appears to have been the slightly more rigorous standard." *Eisemann*, 401 F.3d at 110-11. Accordingly, Petitioner is not entitled to habeas relief on his claim of ineffective assistance based on allegedly conflicted appellate counsel.

### 2. General Ineffective Assistance of Counsel Claim

Regarding the claim that appellate counsel was ineffective for failing to interview a witness and failing to diligently perfect the appeal, the Objections do not advance new arguments. Having reviewed the Report and finding no clear error, the Report's recommendation to reject this claim is adopted.

### 3. Due Process Claim

With respect to the claim that the protracted appeal violated Petitioner's due process rights, the Report recommends that this claim be rejected because: (1) Petitioner has not met the AEDPA standard; and (2) even applying Second Circuit law, Petitioner has not shown that the state (rather than his own counsel) was responsible for the delay or that he was prejudiced as a result of the delay. Petitioner objects to the Report's finding that Petitioner solely blames

appellate counsel for the delay and asserts that he "distribute[s] blame for the fifteen years delay in the filing of his appeal equally to the court, and the court system."  Petitioner is not entitled to habeas relief on this claim.

The state court's denial of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court.  The Second Circuit has held that criminal defendants have a right to a timely appeal, but "[t]he Supreme Court has not yet directly addressed the issue of whether the Constitution guarantees a speedy criminal appeal . . . ."  *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991); *see also Reed v. Quarterman*, 504 F.3d 465, 487 (5th Cir. 2007) (finding that "the Supreme Court has not 'broken sufficient legal ground' on the subject of appellate delay as a due process violation to 'satisfy the AEDPA bar'").  Under the AEDPA, Petitioner is therefore not entitled to habeas relief.  *See* 28 U.S.C. § 2254(d)(1).

Even under Second Circuit case law and even if he had shown that his own counsel was not responsible for the delay, Petitioner would not be entitled to habeas relief because he has not demonstrated prejudice.  The Second Circuit recognizes a due process right to a speedy appeal.  *See Cody*, 936 F.2d at 719.  To determine whether this right has been violated, courts in this Circuit use "the *Barker* criteria."  *Id.*  These factors include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  To be entitled to habeas relief, "the court must further determine whether the delay so tainted the appellate process as to 'affect the constitutional integrity of the appeal itself.'"  *Cody*, 936 F.2d at 722 (quoting *Simmons v. Reynolds*, 898 F.2d 865, 869 (2d Cir. 1990).  In this case, the record does not support a finding that the disposition of the appeal was tainted by the delay.  Where, as here, petitioner's "appeal was actually heard, and

. . . he was represented by competent counsel on that appeal, any prejudice he may have suffered from the delay did not harm his ability to get a fair, albeit late, review of his conviction." *Simmons*, 898 F.2d at 869.

The Objections assert that Petitioner was prejudiced by appellate counsel's delay because the state court's ruling rejecting his *Brady* claim would have been automatically reversed had the appellate brief been filed sooner; however, this claim is unsupported by case law or factual evidence. Beyond this assertion, Petitioner does not explain what additional arguments he has that are stronger and should have been raised. Petitioner therefore has not shown, as he must, any prejudice as a result of the delay. Accordingly, Petitioner's due process claim based on appellate delay is rejected.

### D. *Sandoval* Violation Claim

Petitioner's fourth ground for seeking habeas relief is that he was denied a fair trial by the trial court's *Sandoval* ruling. In particular, Petitioner argues that the trial court's ruling was based on false representations made by the prosecution, and that Petitioner intended to testify at trial but decided not to after the *Sandoval* ruling. This claim fails as a matter of law.

Petitioner has not shown that the state court's adjudication of this claim on collateral appeal was contrary to -- or an unreasonable application of -- clearly established federal law. In *Luce v. United States*, 469 U.S. 38 (1984), the Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Luce*, 469 U.S. at 43. When a defendant does not testify, "[a]ny possible harm flowing from a . . . ruling permitting impeachment by a prior conviction is wholly speculative." *Id.* at 41. "Because an accused's decision whether to testify 'seldom turns on the resolution of one factor,'

a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." *Id.* at 42 (internal citation omitted).

Although *Luce* involved a ruling on a motion in limine pursuant to Federal Rule of Civil Procedure 609(a), its reasoning applies with equal force to *Sandoval* rulings. Courts in this Circuit have relied on *Luce* to "bar[] habeas relief for allegedly erroneous *Sandoval* rulings in instances where a defendant elects not [to] testify." *Melendez v. LaValley*, 942 F. Supp. 2d 419, 424 (S.D.N.Y. 2013) (quoting *Shannon v. Senkowski*, No. 00 Civ. 2865, 2000 WL 1683448, at *6-7 (S.D.N.Y. Nov. 9, 2000)); *see also Andrews v. LeClaire*, 709 F. Supp. 2d 269, 278 (S.D.N.Y. 2010) (collecting cases). Because Petitioner did not testify at trial, he is not entitled to habeas relief on this claim.

### E.   Ineffective Assistance of Trial Counsel Claim

Petitioner's fifth ground for seeking habeas relief is that trial counsel was ineffective by failing to request a jury charge on accessorial liability based on Section 20.15 of the New York Penal Law. According to Petitioner, had this charge been given, he likely would have been found guilty of manslaughter, even while Bigga was convicted of murder. Petitioner's argument appears to be that trial court's failure to request this charge led the jury to conclude erroneously that he could be convicted of homicide based on the culpable mental state of Bigga.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-88. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," so a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound

15

trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Second, a petitioner must demonstrate that the deficiency prejudiced him.  *Id.* at 692.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id.* at 691.  To satisfy the second prong, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 694).

Based on a review of the record, trial counsel's decision not to request a charge under Section 20.15 does not amount to a deficient performance for at least two reasons.  First, the jury charge given at trial emphasized that the prosecution needed to prove beyond a reasonable doubt that Petitioner acted with the intent to cause the victim's death.  Second, Petitioner has not shown that Section 20.15 charge was required in this case, despite his conclusory assertion that it "must be given."  Counsel has "wide latitude" in "making tactical decisions."  *Strickland*, 466 U.S. at 689.  "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."  *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009).  An attorney is under no obligation "to advance every nonfrivolous argument that could be made."  *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

Petitioner also fails to demonstrate that trial counsel's failure to request this charge resulted in prejudice.  As thoroughly described in the Report, the trial court provided instructions about the intent requirement for each charged crime.  Petitioner offers no basis for concluding that the jury did not follow the instructions given.  A "crucial assumption underlying our constitutional system of trial by jury [is] that jurors carefully follow instructions."  *Francis v.*

*Franklin*, 471 U.S. 307, 324 n.9 (1985).  Accordingly, Petitioner has not shown that trial counsel was ineffective.

## IV.   CONCLUSION

For the reasons stated above, the Report is ADOPTED, and the petition for a writ of habeas corpus is DENIED.  As Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2); *Hoffler v. Bezio*, 726 F.3d 144, 154 (2d Cir. 2013).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is directed to mail a copy of this Opinion to Petitioner Helmer Brightley and close this case.

Dated: March 15, 2016
    New York, New York

*[signature]*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**